IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| GEORGIA FARM BUREAU MUTUAL ) | |
| INSURANCE COMPANY, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Civil Action |
| v. ) | No. 5:03-cv-226 (CAR) |
| ) | |
| GREAT AMERICAN EXCESS & ) | |
| SURPLUS INSURANCE COMPANY, ) | |
| ) | |
| Defendant. ) | |

*ORDER ON MOTIONS FOR SUMMARY JUDGMENT*

Both parties have filed motions for summary judgment in this case, in which Plaintiff Georgia Farm Bureau Mutual Insurance Company ("Georgia Farm") seeks to recover benefits under an "Insurance Companies Professional Liability Insurance Policy" (the "ICPLI Policy") issued by Defendant Great American Excess & Surplus Insurance Company ("Great American"). Upon review of the arguments of counsel, the evidence in the record, and the relevant legal authorities, and for the reasons set forth below, the Court finds that there are no genuine issues of material fact and that the Defendant is entitled to judgment as a matter of law. Accordingly, Plaintiffs' Motion for Partial Summary Judgment (Doc. 35) is **DENIED** and Defendant's Motion for Summary Judgment (Doc. 40) is **GRANTED**.

Georgia Farm seeks to recover benefits in connection with its settlement in 2002 of a class action lawsuit by holders of its automobile insurance policies who claimed that Georgia Farm wrongfully denied coverage for the diminished value of damaged vehicles after repair. The class

1

action case, referred to throughout the proceedings in this case as the "Head/Hamlet litigation," was filed in the Superior Court of Muscogee County, Georgia, in November 2000. Georgia Farm notified Great American of the suit and requested coverage and defense. The request was denied in a February 28, 2001 letter from Great American's Senior Claims Attorney Evan Vobiril. (Plaintiff's Ex. 8, GA00020). On November 28, 2001, the Supreme Court of Georgia issued its opinion in a similar case filed by the same plaintiffs' attorneys against State Farm Mutual Automobile Insurance Company. In that opinion, the Supreme Court held that insurers were obligated to compensate for diminished value after repairs, and that this obligation was retroactive. State Farm Mut. Automobile Ins. Co. v. Mabry, 556 S.E.2d 114 (Ga. 2001). In response to the Court's decision, Georgia Farm opted to settle the claims against it for a total payment of $29,421,094.50. The amount was calculated based on the settlement in the State Farm case, according to a formula used by the Georgia Insurance Commissioner, enhanced to allow for payment of attorneys' fees without diminishing the class members' recoveries. The amount of the settlement representing attorneys' fees was $8,826,000.

Mr. Vobiril's letter denying coverage and defense cites two specific exclusions found in the Great American professional liability policy. The general coverage provision of the policy promises to reimburse Georgia Farm for any Loss resulting from a Claim against it for a Wrongful Act. The terms are defined as follows:

**Loss** (Section III. H.):

> compensatory damages, punitive or multiplied damages except as otherwise provided herein, settlements, and Costs of Defense provided, however, that Loss shall not include:
> (1)  fines or penalties;
> (2)  taxes; or

        (3)    any matter which may be deemed uninsurable under the law pursuant to which this policy shall be construed.

**Claim** (Section III. G.):

any civil proceeding initiated against an Insured before any governmental body which is legally authorized to render an enforceable judgment or order for damages against any such Insured and shall include any appeal from such proceeding.

**Wrongful Act** (Section III. E.):

any actual or alleged act, error or omission by or on behalf of the insured committed or omitted in the performance of Professional Services.

**Professional Services** (Section III.F.):

claims handling and adjusting, safety inspections, loss control, safety engineering, premium financing, insurance consulting, actuarial consulting, risk management, personal injury rehabilitation, subrogation and salvage, rescissions, cancellations, credit and investigating activities, insurance agents and insurance brokerage operations.

The exclusions cited by Mr. Vobiril are found in Section IV of the Policy:

The Insurer shall not be liable to make any payment for Loss in connection with any Claim made against the Insured:

    J.    for liability under contract or agreement, except liability which would have attached to the Insured even in the absence of such contract or agreement.

    N.    for benefits, coverage or amounts due or allegedly due, including any amount representing interest thereon, from the Insured as an insurer or reinsurer, under any policy or contract or treaty of insurance, reinsurance, suretyship, annuity or endowment.

The construction of these exclusions is determinative of the question of coverage.

Construction of terms in a contract is ordinarily a question of law for the Court. O.C.G.A. § 13-2-1. If the language of a contract is clear and unambiguous, "the court simply enforces the

contract according to its clear terms; the contract alone is looked to for its meaning." <u>Lostocco v. D'Eramo</u>, 518 S.E.2d 690, 695 (Ga. Ct. App. 1999). Unless they are technical words, terms of art, or words used in a particular trade or business, the words of a contract generally bear their usual and common signification. O.C.G.A. § 13-2-2(2). "Ambiguity exists when the meaning is uncertain, and the language may be fairly understood in more than one way." <u>Lostocco</u>, 518 S.E.2d at 695.

There is no ambiguity in the terms of the exclusions at issue in this case. The unambiguous language of the exclusion at Section IV. N. forecloses coverage for Georgia Farm's settlement, including coverage for "extracontractual damages" such as the class members' attorneys' fees or any punitive damages or bad faith penalties. The exclusion is quite broad. Where there is a claim for benefits or coverage under a policy, it excludes not only the simple amount of benefits that would have been due under the policy, but extends to any Loss "**in connection with**" a claim for benefits or coverage. The term "connection," in its usual and common signification, means "[t]he condition of being related to something else by a bond of interdependence, causality, logical sequence, coherence, or the like." <u>Oxford English Dictionary</u>, 2nd Edition (1989). The "extracontractual damages" that Georgia Farm alleges it paid to the Head/Hamlet class members are connected or related to the underlying claim for benefits under Georgia Farm's automobile insurance policy by bonds of dependence and causality. Georgia Farm's failure to pay the benefits was the cause of its obligation to pay attorneys' fees or bad faith penalties. In the absence of a contractual duty under the policy to pay benefits for diminished value, Georgia Farm would have had no liability for the alleged "extracontractual" damages.

Georgia Farm itself recognizes that the scope of this exclusion is very broad, that it likely excludes coverage for a large proportion of the errors and omissions that an insurance company might commit in the course of claims handling and adjusting. As Georgia Farm notes, it appears from the scope of this exclusion that:

> there is no Claim for a Loss and never will be a Claim for a Loss against a Great American insured for an error or omission in claims handling and adjusting because the extracontractual claims are always intimately connected with the contract coverage. Every bad faith claim and claim for extracontractual coverage specifically arises out of the breach of some contractual duty by the Great American's insured such as Georgia Farm. There is no duty to [*sic*] and no possible claims by a Georgia Farm insured except those arising out of the contract benefits.

Doc. 47, p. 10. By their nature, "bad faith claims and extracontractual damages are intimately connected with the insurance policy contract coverage and the purported breach of that coverage." Id. at 13.

Though the matter is not before the Court, the exclusion seems to be broad enough to exclude even the hypothetical situation suggested by Great American as a valid claim for benefits under its policy. Great American proposes that "a common situation where the ICPLI Policy could apply involves circumstances where an insurance company negligently refuses to settle a lawsuit for an amount within its policy limits, which results in a judgment against its insured in excess of policy limits." Doc. 41, p. 18. Even in that situation, the insurance company's loss would be connected to a claim for benefits, as it would have no obligation to settle within the policy limits if it had no obligation to provide coverage under its policy.

Although the policy's exclusions of coverage for losses in connection with a claim for benefits greatly limit coverage for professional services in the course of claims handling and

adjusting, those exclusions do not foreclose coverage in all situations. In the context of claims handling and adjusting, there are foreseeable situations where liability might arise unconnected to claims for benefits or contractual obligation, as in the case of a claims adjuster who causes injury to persons or property in the course of investigating a claim. It must also be noted that the policy covers errors and omissions not only in the course of claims handling and adjusting, but also in the performance of other professional services, such as safety inspections, loss control, and safety engineering. "Under Georgia law, an insurance company is free to fix the terms of its policies as it sees fit, so long as such terms are not contrary to law, and it is equally free to insure against certain risks while excluding others." Continental Casualty Co. v. H.S.I. Financial Services, Inc., 466 S.E.2d 4, 6 (Ga. 1996). "Courts have no more right by strained construction to make an insurance policy more beneficial by extending the coverage contracted for than they would have to increase the amount of coverage." Capital Indem., Inc. v. Brown, 581 S.E.2d 339, 342 (2003). There has been no showing that the policy's exclusions were contrary to law. The language and applicability of the exclusions are unambiguous in this case and the principle of *contra proferentum* has no relevance. The policy must be applied as it is written, and as written it does not provide coverage in this situation.

      **SO ORDERED**, this 20th day of June, 2005.

                                        S/ C. Ashley Royal
                                        C. ASHLEY ROYAL
                                        UNITED STATES DISTRICT JUDGE

CW/jec